IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT WAYNE SIMMONS,<br><br>                Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER<br><br>2:15-cv-00242-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Mr. Simmons seeks review of the ALJ's denial of his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401–434. Mr. Simmons protectively filed his DIB application in July 2006, alleging disability beginning March 1, 2003. (Admin. R. 165–69, certified copy tr. of R. of admin. proceedings: Robert W. Simmons (hereinafter "Tr. __"), ECF No. 13.) The Administrative Law Judge ("ALJ") found Mr. Simmons not disabled at step five because the ALJ found Mr. Simmons can perform other work existing in significant numbers in the national economy. (Tr. 899–901.)

Based on the Court's careful consideration of the record, the parties' memoranda, oral argument, and relevant legal authorities, the Court REMANDS the Commissioner's Decision.[1] Ultimately, the Court finds ALJ's decision fails to discuss adequately Mr. Simmons's mental impairments and limitations. As a result, the Court cannot determine whether the ALJ applied proper legal standards in analyzing Mr. Simmons's mental functioning or whether substantial

---

[1] The parties jointly consented to this Court's determination of the case under 28 U.S.C. § 636(c). (ECF No. 9.)

evidence supports the ALJ's conclusion that Mr. Simmons can perform a range of semiskilled light work with additional limitations.

## PROCEDURAL HISTORY

In July 2006, Mr. Simmons filed an application for disability insurance benefits, alleging disability beginning March 1, 2003. (Tr. 165–69, 884.) Mr. Simmons remained insured for the purposes of disability benefits through June 30, 2006. (Tr. 184, 884–85.) Thus, to prevail, Mr. Simmons must prove he qualified as disabled from some time beginning March 1, 2003 or after, but not later than June 30, 2006. The Social Security Administration denied Mr. Simmons's claim initially and on reconsideration. (Tr. 64–69, 73–77, 884.) After a hearing conducted by an ALJ, (tr. 24–63), the ALJ found Mr. Simmons not disabled in a decision dated April 15, 2009, (tr. 12–23). The Appeals Council denied Mr. Simmons's request for review of that decision. (Tr. 1–3.) Mr. Simmons appealed to the federal district court, who remanded the decision in August 2012 for further consideration of the Veterans Administration's (VA) disability determination. (*See* tr. 1074–78, 884; *Simmons v. Astrue*, No. 2:10-cv-940 BCW, 2012 WL 3202942, at *3 (D. Utah Aug. 3, 2012) (unpublished).) Following a second ALJ hearing, (tr. 972–95), the ALJ issued a decision finding Mr. Simmons not disabled in March 2013, (tr. 1091–1106), before Mr. Simmons had submitted documentation from the VA, (tr. 1085). The Appeals Council remanded that ALJ's decision in September 2013, with instructions to:

- Evaluate the benefit award letter from the Veterans' Administration submitted on appeal, along with any additional evidence submitted.
- Further consider [Mr. Simmons's] residual functional capacity on the updated record, citing specific evidence in support of the assessed limitations (20 CFR 404.1545).
- Further consider whether [Mr. Simmons] has past relevant work he could perform with the limitations established by the evidence (Social Security Rulings 82-61 and 82-62).

- As appropriate, secure supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Mr. Simmons's] occupational base (Social Security Rulings 83-14 and 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 1085–86; *see* tr. 884.) After a third hearing, (tr. 909–66), the third ALJ issued a decision on May 9, 2014 finding Mr. Simmons not disabled. (Tr. 884–901.) On February 10, 2015, the Appeals Council denied Mr. Simmons's request for review. (Tr. 865–68.) Thus, the ALJ's May 2014 decision became the Commissioner's final decision for purposes of this Court's review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g). Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[2] The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly

---

[2] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted). Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted).

In addition to a lack of substantial evidence, the court may reverse where the Commissioner uses the wrong legal standards, or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Mr. Simmons, born November 17, 1954, (tr. 184, 899), completed high school and four years of an accelerated program in chemical engineering at Duke University, (tr. 182, 785, 224). Mr. Simmons entered the navy in 1973, where he served until honorably discharged in 1974. (Tr. 389.) Mr. Simmons has past relevant work as a manager at a chemical company, at one point managing between eighty to more than 160 employees. (Tr. 177–78, 899, 917.) In 1995, Mr. Simmons's employer terminated him, and Mr. Simmons entered the University of Utah Neuropsychiatric Institute after the onset of a manic episode. (Tr. 784, 787–89.) Mr. Simmons subsequently spent approximately five years incarcerated for attempted robbery. (Tr. 46–47,

4

389, 836–59.)  His term of imprisonment ended in 2001.  (Tr. 837.)  In March 2005, Mr. Simmons began receiving a non-service connected disability pension from the VA.  (Tr. 898, 1218; *see* tr. 860.)  Mr. Simmons had at least thirteen psychiatric admissions between March 1, 2003 and June 30, 2006, the relevant period of alleged disability.  (Tr. 386.)

The ALJ found Mr. Simmons disabled when he considered Mr. Simmons's severe impairments of  alcohol dependence and a substance induced mood disorder, polysubstance abuse and a major depressive disorder, degenerative disk disease of the low back, and hypertension.  (Tr. 887–89.)  However, the ALJ found Mr. Simmons's substance use material to the initial disability finding and reasoned that in the absence of substance use Mr. Simmons did not qualify as disabled.  (Tr. 889–901.)  The ALJ found Mr. Simmons retained the residual functional capacity (RFC) to perform light semiskilled work, with the following additional limitations:

- Lifting up to 10 pounds at a time on more than an occasional basis (where occasional means from very little up to 1/3 of the day);
- Lifting and carrying articles weighting up to 10 pounds, on more than an occasional basis;
- Standing or walking up to 30 minutes at one time, for up to 6 total hours in an 8-hour day;
- Sitting up to 30 minutes at one time, for up to 6 total hours in an 8-hour day;
- Note:  regarding standing/walking and sitting, to be as comfortable as possible, [Mr. Simmons] would have required the option to make the postural changes noted above, thus there must have been an option to perform work duties while standing/walking or sitting, due to the need for these postural changes;
- No more than occasional stooping, bending, twisting or squatting;
- No working on the floor (e.g. no kneeling, crawling, or crouching);
- No ascending or descending full flights of stairs (but a few steps up or down not precluded);
- No overhead lifting or overhead reaching; and,
- Working only at a low stress level, which means a low production level (where VE classified all SGA jobs as low, average or high production).

(Tr. 891–92.)  Based on Mr. Simmons's age, education, work experience, and the RFC, the ALJ found Mr. Simmons could perform three specific sedentary semiskilled occupations existing in significant numbers in the national economy, such as a personnel scheduler, order clerk, and time keeper.  (Tr. 900.)

      Mr. Simmons challenges the ALJ's decision at several steps, with arguments that build on each other.  First, Mr. Simmons argues the ALJ erred by failing to find several severe impairments at step two, including bipolar disorder, PTSD, pathological gambling, and personality disorders.  (*See* Pl.'s Opening Br. 11–13, 16–17, ECF No. 20.)  Next, Mr. Simmons contends the Court should not find the ALJ's lack of analysis at step two harmless because the ALJ's materiality analysis did not encompass all of Mr. Simmons's severe impairments and "therefore undervalued their compulsive comorbid effect."  (*See id.* at 13–14, 17–20.)  Fourth, Mr. Simmons argues the ALJ improperly assigned no weight to treating physician Dr. Tragakis's opinion.  (*See id.* at 20–22.)  Finally, Mr. Simmons argues the ALJ relied on an incomplete and ambiguous hypothetical that did not include all of Mr. Simmons's limitations with precision.  (*See id.* at 14–16, 23–25.)  As explained below, the Court finds it cannot follow the ALJ's analysis of Mr. Simmons's mental impairments starting at step two and proceeding through the ALJ's RFC assessment; thus, the Court cannot determine if substantial evidence supports the ALJ's conclusion that Mr. Simmons can perform work in the national economy at step five.

      At step two, the ALJ found Mr. Simmons had several severe impairments, including alcohol dependence, substance induced mood disorder, polysubstance abuse, major depressive disorder, degenerative disk disease, and hypertension.  (Tr. 887.)  The ALJ did not discuss any nonsevere impairment; thus, the Court cannot evaluate any specific findings on Mr. Simmons's bipolar disorder, PTSD, pathological gambling, or personality disorders.  (*See id.*)  However,

where the ALJ finds at least one impairment severe and proceeds to subsequent steps of the evaluation, the ALJ commits no reversible error in failing to find another particular impairment severe at step two. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

Concerns arise during the ALJ's step three analysis of Mr. Simmons's mood disorder, wherein the ALJ collapses Mr. Simmons's bipolar diagnosis within the analysis of his substance induced mood disorder. (*See* tr. 889.) In considering Mr. Simmons's substance use disorders along with his mental impairments, the ALJ states:

> [Mr. Simmons] also has a mood disorder, which has been characterized as a "substance-induced mood disorder" that manifests itself through symptoms such as depressed mood, suicidal ideations and attempts, anxiety, feelings of helplessness and hopelessness, self-hatred, feelings of doom, poor appetite, auditory hallucinations, and decreased energy. Michael W. Tragakis, Ph.D., a treating source, concludes the claimant's "functional disabilities stem from the mood disorder (Bipolar Mood Disorder), his substance dependence, as well as from the interaction between these two conditions."

(*Id.* (record citations omitted).) Thus, the ALJ apparently considers and relies on Dr. Tragakis's statement characterizing Mr. Simmons's mood disorder as bipolar mood disorder, which, along with Mr. Simmons's substance dependence, implicated his functional disabilities. However, the ALJ does not reject or clearly explain his view of Dr. Tragakis's diagnosis of Mr. Simmons's mood disturbance as "more consistent with bipolar mood disorder in recent years." (Tr. 889–90; tr. 860 (Dr. Tragakis's opinion); *see* 20 C.F.R. § 404.1527(c) (reflecting an ALJ's duty to evaluate every medical opinion); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (holding ALJ must provide "specific, legitimate reasons" to reject a medical opinion) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).) During the RFC analysis, the ALJ discusses and gives no weight to Dr. Tragakis's opinion on Mr. Simmons's specific functional disabilities, but that analysis does not illuminate the ALJ's view of Dr. Tragakis's diagnosis of

bipolar disorder. (*See* tr. 897.) Further, the lack of weight given to Dr. Tragakis's opinion begs the question of how the ALJ considered Dr. Tragakis's diagnosis of bipolar disorder when he cited it earlier. (Tr. 889.) The impact of a lack of substance abuse on a substance induced mood disorder would likely differ from its impact on a bipolar mood disorder. Without explanation of this conclusion, the ALJ's treatment of the two as the same because they both fall under the title "mood disorder," (*see* tr. 889; Def.'s Answer Br. 12, ECF No. 27), lacks persuasive force.

Nor does the ALJ explain his view of those records before and after the relevant disability period that show diagnoses of bipolar disorder and continuing mental health treatment. (*See, e.g.*, tr. 777, 781, 787, 789–90 (pre-alleged period of disability); 733, 860, 1271, 1276, 1286, 1290, 1296 (post-alleged period of disability).) Mr. Simmons cites many records that document a long history of depression and mood disorders, including bipolar disorder. (*See* Opening Br. 12, ECF No. 20 (citing tr. 29, 279, 280–81, 390, 439–40, 444, 449, 485, 499, 520, 534, 538, 603, 608, 616–17, 697, 707, 733, 771, 777–78, 781, 787, 833, 860–62, 1271, 1276, 1281, 1289, 1292, 1296)). The records reflect Mr. Simmons reported an initial diagnosis of bipolar disorder in the 1990s, (*see* tr. 777, 781, 787, 790), but also show doctors adjusted the diagnosis to major depressive disorder, mood disorder, or substance-induced mood disorder by the alleged period of disability, (*see, e.g.*, tr. 281, 386, 470–71, 485, 499, 603, 616–17). Prison records provide evidence that Mr. Simmons sought mental health treatment while incarcerated and during a period of sobriety within a few years of the relevant disability period. (*See, e.g.*, tr. 245, 250, 256, 259, 846, 855, 859.) The record also contains diagnoses of bipolar disorder after the alleged period of disability, which also includes periods of sobriety. (*See* tr. 707, 712, 733, 860, 1269–72, 1276, 1286, 1290, 1296.)

The Court recognizes much of this evidence falls outside the relevant disability period. However, this evidence prior to and after the alleged disability period also contains seemingly the only prolonged periods of sobriety from which the ALJ might assess the severity of Mr. Simmons's mental impairments in the absence of substance use, as well as any consequent functional limitations arising therefrom. *See Salazar v. Barnhart*, 468 F.3d 615, 622–24 (10th Cir. 2006) (indicating that an ALJ must look closely at periods of abstinence to determine whether disability persists in the absence of substance use).

The ALJ's failure to explain his view of the evidence on Mr. Simmons's bipolar disorder, including evidence on which the ALJ appears to rely, creates confusion as to whether the ALJ considered the bipolar disorder not medically determinable or considered it medically determinable but nonsevere. If the latter, the ALJ would have to consider the bipolar diagnosis as a nonsevere impairment in the RFC assessment at step four. 20 C.F.R. § 404.1545(a)(2) ("[The Social Security Administration] will consider all of [the claimant's] medically determinable impairments of which [it is] aware, including [the claimant's] medically determinable impairments that are not 'severe,' . . . when [it] assess[es] [the RFC]."); *see Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013) ("[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC . . . . [T]he ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not.").

During the RFC assessment, the ALJ analyzed Mr. Simmons's mental impairments when assessing his credibility and the ALJ's the analysis suggests little to no functional limitations from Mr. Simmons's mental impairments. (*See* tr. 894 (discussing evidence on Mr. Simmons's mental impairments that "suggest[s] only minimal symptoms when separated out from substance

abuse" and noting Mr. Simmons's functioning "significantly improved" when free of substance use, and Mr. Simmons "function[ed] fine while he was in a controlled environment").) But these findings seem to conflict with the moderate mental limitations the ALJ found at step three. (Tr. 890–91.) In the absence of substance use, the ALJ found moderate limitation in Mr. Simmons's social functioning based on "treatment notes of [Mr. Simmons's] interactions during group therapy and inpatient hospital stays during the relevant period." (Tr. 891.) The ALJ also found moderate difficulties in Mr. Simmons's concentration, persistence, or pace, relying on treatment notes "during a period of sobriety," (tr. 891 (citing tr. 390)), and on Dr. Tragakis's opinion, which states Mr. Simmons's mood disorder limits his functioning even during periods of sobriety, (*id.* (citing tr. 860–64)). Finally, the ALJ found Mr. Simmons would experience one to two episodes of decompensation in the absence of substance use. (*Id.*) The ALJ does not explain how the RFC accounts for these moderate mental limitations. The ALJ also found mild limitations on Mr. Simmons's activities of daily living but does not explain what they are. (Tr. 890.) The ALJ limits Mr. Simmons to a limited range of semiskilled, low stress (meaning low production) work, (tr. 892), but provides no explanation of how low stress and low production work encompasses the mild and moderate mental limitations Mr. Simmons experiences. *Cf. Wells*, 727 F.3d at 1069–71 (concluding that the ALJ may not rely on a step two finding of non-severity as a substitute for adequate RFC analysis, as the "regulations demand a more thorough analysis").

Furthermore, state agency physicians that the ALJ gives great weight note Mr. Simmons has moderate limitations in mental functioning, but the ALJ fails to explain how he incorporated or rejected those opinions. (*See* tr. 898, 761–66.) More specifically, Dr. Wehl's Mental RFC notes moderate limitations in Mr. Simmons's ability to understand, remember, and carry out

detailed instructions, but the ALJ does not mention or incorporate these limitations in the RFC assessment.[3] (*Compare* tr. 898 *with* tr. 761–64.)  In addition, the ALJ gave great weight Dr. Swaner, (tr. 896), but does not discuss the Dr. Swaner's testimony that Mr. Simmons exhibited moderate functional limitation in accepting instructions and responding appropriately to criticism from supervisors even in the absence of substance abuse, in addition to other mild limitations, (tr. 989).  While the ALJ need not incorporate limitations into the RFC finding the ALJ finds unsupported by the medical record, the ALJ must at least explain how the RFC captures mental limitations the ALJ himself found, as well as those limitations noted in the medical opinions on which he relies.

As a consequence of these compounding issues, this Court cannot determine whether the ALJ applies the correct legal standards at step two or four or whether a substantial evidentiary basis exists for the ALJ's finding minimal mental limitations in the RFC.  The Court finds the ALJ's analysis of Mr. Simmons's mental impairments both insufficient and internally conflicting and therefore unsupported by substantial evidence and not clearly free of legal error.  The ALJ's step five analysis offers no additional information from which the Court could find these earlier errors harmless.  The ALJ finds Mr. Simmons has transferrable skills and that those transferrable skills enable him to perform semiskilled jobs.  (Tr. 899.)  However, the ALJ's transferrable skills conclusion lacks any reference to Mr. Simmons's mental limitations.  (*See id.*)  Thus, the Court

---

[3] The Court recognizes that Dr. Wehl marks these moderate limitations in Section I of a Mental RFC form and that courts have held an ALJ need not specifically rely on the limitations in Section I where the ultimate RFC finding addresses the doctor's conclusions in Section III.  *See, e.g.*, *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (unpublished).  However, Dr. Wehl does not explain these moderate limitations in the Section III narrative.  (*See* tr. 763–64.)  Therefore, the ALJ may not "turn a blind eye to" the limitations identified in Section I, and the ALJ must still "sufficiently capture[] the essence of" the functional limitations in the RFC finding.  *Carver v. Colvin*, 600 F. App'x 616, 619–20 (10th Cir. 2015) (unpublished).

cannot infer anything about Mr. Simmons's mental limitations from the ALJ's step five conclusion.

## REMAND

The Court may exercise its discretion to remand the Commissioner's decision either for further administrative proceedings or for an immediate award of benefits.  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  In determining the appropriate remedy, courts consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'"  *Salazar*, 468 F.3d at 626 (alteration in original) (citation omitted) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)).

While the Court laments the age of this case and its history of repeated remands, the Court finds that additional fact-finding would serve to clarify the impact of Mr. Simmons's mental limitations on his RFC and the ALJ's step five finding that he can perform light, semi-skilled work with reductions.  Therefore, the Court REMANDS the Commissioner's decision for further administrative proceedings.

DATED this 18th day of August, 2016.

BY THE COURT:

*[signature: Evelyn J. Furse]*
EVELYN J. FURSE
United States Magistrate Judge